## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47161-2-II |
| Respondent, | |
| v. | |
| ROSS CONRAD CRANOR, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. —Ross Conrad Cranor appeals his convictions for burglary in the second degree, possession of stolen property in the first degree, and two counts of bail jumping. He argues that the State committed prosecutorial misconduct when the prosecutor misstated evidence during closing argument. He also argues he received ineffective assistance of counsel because his lawyer failed to renew a motion to sever the bail jumping charges and failed to object when the prosecutor misstated the evidence during closing. We affirm.

FACTS

I.    GENERAL OVERVIEW

On the morning of October 2, 2012, Marilyn and Scott Campbell[1] observed a man, later identified as Cranor, on their personal beach in Mason County. Cranor did not have permission to be on their property. Scott yelled to Cranor, asking if he needed some help. Cranor walked up

---

[1] For clarity, we will refer to the Campbells by their first names when acting individually. We intend no disrespect.

towards the Campbells' home and asked to use their phone. Scott gave him permission to use his phone and observed Cranor dial a number. Scott did not hear anything on the other end of the line and did not hear Cranor leave a message.

Cranor walked back to the beach. Marilyn watched Cranor take items from the Campbells' dock and beach cabana area and drop them down onto the beach where there appeared to be a boat. Scott saw Cranor putting what looked like a big black bag down on the beach. The Campbells then observed Cranor row away from their beach in a boat. Marilyn called 911, and Scott followed Cranor along the shoreline. Scott asked Cranor why he was on other people's beaches; Cranor did not respond.

Scott followed Cranor along the shoreline until he brought the boat to shore. Scott observed Cranor carrying three large black bags. Scott continued to follow Cranor until Cranor passed a sign that said something similar to, "[D]ay use only; no overnight camping." 1 RP at 78. Cranor pointed at the sign and said to Scott, "[D]on't walk past that sign." 1 RP at 78. Cranor walked up a hill and Scott lost sight of him.

The Campbells found that their barbeque grill had been moved, had been turned on, and had been depleted of propane. A can appeared to have been burned on the grill and the barbecue grill cover was missing. The Campbells' axe was laying by the fire pit and, it looked as though someone had attempted to start a fire. According to Marilyn, the grill cover had been there the day before and there had been propane in the grill.

Mason County Deputy Michael Western arrived shortly after Cranor walked up the hill. Western waited for another deputy to arrive and then they searched the area. They did not find Cranor. Scott and Western examined the boat and Western took photographs of the boat and its contents. According to Scott, the boat was a Livingston rowboat. Scott observed his grill cover

in the boat. The boat also contained miscellaneous items including a motor, a Makita tool, a mantel clock, a 12 volt battery, and a Hewlett Packard printer. Western photographed bottles of liquor that were in the area surrounding the boat.

The sheriff's office matched the found items with previously reported burglaries. Investigating Officer Sean Dodge stated that he found "four to five different cases involving burglaries with items that were reported stolen" in the same area, including one victim by the name Gordon Walgren.[2]  1 RP at 145.

Walgren returned from a two or three week vacation to find his home burglarized. Walgren turned in an insurance claim for the missing items totaling $13,000; however, because of depreciation, the value was estimated at $5,800. He received approximately $5,000 in insurance. Among the items missing were a small combination tool, a Hewlett Packard scanner, a battery taken from a boat, a Livingston rowboat, and bottles of liquor. Walgren acknowledged that none of the items missing was particularly identifiable. However, Walgren received back almost all of the items he reported missing at the same time from the sheriff's office.

The Campbells provided Western with the number Cranor had dialed on their phone. Dodge later entered the telephone number into a sheriff's office database of people who had had previous contact with the office. The only name in the database associated with the number was Cranor's. Both Marilyn and Scott later identified Cranor from a photo montage Dodge presented to them. They identified Cranor as the man on their beach. Additionally, Marilyn and Scott identified Cranor in the courtroom during his trial as the man they saw on their beach.

---

[2] Walgren did not report the items stolen until October 14 because he was out of town. It is therefore not clear from the record precisely when the burglary took place.

II.    PROCEDURAL FACTS

The State charged Cranor with burglary in the second degree and possession of stolen property in the first degree. After Cranor failed to appear at court for these charges on two separate occasions, the State added two counts of bail jumping.

Prior to the start of trial, Cranor moved on three occasions to sever the bail jumping charges from the original charges. First, on November 5, 2014 he argued, that bail jumping has a "very negative connotation" and leaves "a bad flavor in the juror's mouths." RP (Nov. 5, 2014) at 3. He argued that joining the bail jumping charges to the original charges was prejudicial and confusing to the jury. Defense counsel told the trial court that having spoken with jurors in past trials, he knew that the bail jumping issue confused jurors and was prejudicial. The court denied the motion to sever.

The next day, when the State filed an amended information, Cranor renewed his oral motion to sever the bail jumping charges from the original charges. Counsel again referenced his past experience with jurors and argued this situation was "obviously going to be prejudicial" because to defend against the bail jumping charges, Cranor would have to argue he was in jail in another county for other reasons. 1 RP at 3. Cranor claimed he was incarcerated in a neighboring county at the time he failed to appear. The State responded that being in jail in another county was not an example of something beyond Cranor's control. The trial court denied Cranor's motion to sever the bail jumping charges.

Later that morning, the court and parties began jury selection. During voir dire, some jurors acknowledged that they had prior experience with bail jumping and that a defendant's bail jumping might impact their consideration of the case. After inquiring individually, several jurors admitted that bail jumping implicated guilt. These potential jurors were excused. After excusing jurors for

4

hardship and for cause, the court determined there was an insufficient number of jurors to select a panel. The court asked the remaining jurors to return the next day with a new jury venire.

When the court reconvened for the second day of jury selection, Cranor, for a third time, renewed his motion to sever the bail jumping charges from the original charges. He argued the two bail jumping charges were "extremely prejudicial," as "became very clear through the voir dire process." 1 RP at 23. He further argued that "jurors [were] pre-disposed to convict [his] client of the underlying charges if there [were] bail jumping charges." 1 RP at 23. Additionally, Cranor's lawyer again told the court that based on his personal experience talking to jurors after they sat on a case, the jurors believed that if someone did not "show up to court they're hiding something." 1 RP at 23. Defense counsel reiterated that Cranor's defense to the charges was that he was in jail, which was prejudicial. The court asked the State to respond especially in light of the fact that several jurors the day before indicated, without being prompted, that bail jumping would impact their decisionmaking adversely to the defendant. The State said that the purpose of voir dire was to find a fair panel and that the questioning accomplished that goal. The State reiterated that simply saying he was in jail did not satisfy Cranor's affirmative defense to bail jumping. Defense counsel again asserted that he did not believe Cranor could get a fair trial with the charges joined. The trial court denied the motion.

During voir dire of the second jury venire, which included the remaining jurors from the previous day, nobody indicated that he or she could not decide the case fairly; however, several jurors again expressed strong feelings about bail jumping. The parties then exercised their peremptory challenges and selected a jury panel. The court swore in the jury panel. Cranor's lawyer did not renew the motion to sever when the court swore in the jury or when the State rested its case.

During trial, the State called a court clerk to testify. Through her, the State offered, and the court admitted, several court documents. These included, Cranor's pretrial release form in which Cranor agreed to appear in court on proper notice; the order and notice setting trial, omnibus, and other hearings, the clerk's minutes from the arraignment hearing on June 25, 2013, which indicated Cranor's presence and that the omnibus hearing was set for July 22, 2013; as well as the order setting the trial date for May 27, 2014. Cranor signed all of these documents. Also admitted were the two bench warrants issued on July 22, 2013, and May 27, 2014.[3] In the July 22, 2013 clerk's minutes, the clerk wrote, "Message received from Clerk's office indicating def[endant] currently in Kitsap Co. Jail." CP at 75 (Ex. 40). In the May 27, 2014 clerk's minutes, the clerk wrote, "Defendant failed to appear as he is in Kitsap Co. Jail." CP 75 (Ex. 46).

Cranor did not call witnesses but through cross-examination during the State's case in chief advanced the theory of mistaken identity. Cranor emphasized that the Campbells did not know him beforehand, and, thus, they could only testify that a man who looked like Cranor was on their beach. Cranor also argued that there was another man who lived on a boat in the area who could have taken the items.

Cranor did not object to the jury instructions, nor did he voice any concerns or corrections to the instructions. The jury was instructed to consider each count separately. The jury was also instructed on the affirmative defense to bail jumping and the definition of "uncontrollable circumstances." 1 RP at 187. The relevant portion of instruction 28 reads:

> It is a defense to a charge of bail jumping that:
> (1) uncontrollable circumstances prevented the defendant from personally appearing in court; and
> (2) the defendant did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear; and

---

[3] The State also offered and the court admitted the Sheriff's return of bench warrant issued on November 15, 2013, as well as an appearance bond dated November 18, 2013.

6

(3) the defendant appeared as soon as such circumstances ceased to exist.

For the purposes of this defense, an uncontrollable circumstance is an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

The defendant has the burden of proving this defense by a preponderance of the evidence.

Clerk's Papers (CP) at 59.

During closing argument, the State argued that it normally has the burden of proof beyond a reasonable doubt, but with Cranor's asserted affirmative defense, Cranor had to put on evidence to prove it by a preponderance of the evidence. The State argued that although there was an affirmative defense to bail jumping, "there's no evidence before [the jurors] to consider to support this defense because it has to be an uncontrollable circumstance . . . [and] the defendant did not contribute to the creation of such circumstance in a reckless disregard of the requirement to appear." 1 RP at 198. The prosecutor also pointed out that by asserting an affirmative defense, Cranor admitted to all the elements of the crime and supplied no evidence to support the defense.

In closing, Cranor responded that the State presented evidence on the bail jumping charges and that evidence indicated Cranor was in jail in Kitsap County. Cranor also argued that he made contact with the court during the hearing dates. Cranor argued,

> I don't want you to be influenced by the bail jumping. And I think if you—if you put that aside and look at the evidence as a whole, you would find my client not guilty. If you let that influence, you need to take a step back 'cause that is reasonable doubt itself, because you can't be fair and impartial. And my client's entitled to a fair and impartial trial, no matter what he's charged with, no matter what he's done in the past. You have to look at each element of the crimes that he's here for today.

2 RP at 204. Cranor concluded his argument by stating that the State had not provided enough evidence to prove its case.

7

In rebuttal, the State began,

Well, there's an assertion that Mr. Cranor was in custody in Kitsap County jail on the days that he missed court. But that's just an assertion. No evidence has been provided to you of that.

Now more importantly, even if that were true, it's not a defense. Bottom line, look, in order for that to be a defense, he would have to be in jail in Kitsap County for something that he didn't contribute to.

2 RP at 206. Cranor objected, and the court overruled the objection. The State continued:

It indicates in the defense instruction that an uncontrollable circumstance prevented the defendant from personally appearing in court, and the defendant did not contribute to the creation of such circumstance in a reckless disregard of the requirement to appear.

It's evidence you don't have, plain and simple. And it's the defense's burden. If he was in custody in Kitsap County jail 'cause he didn't show up over there doesn't meet the defense. If he's in Kitsap County jail because he committed a new crime—

[Defense Attorney]: I would object, your Honor.

[State]: —doesn't fit the defense.

[Defense Attorney]: Not—arguing facts that are not in evidence.

[Court]: Overruled, it's argument.

[State]: And they are facts not in evidence. It's evidence you don't have, and that's why they can't prove the defense. Even if you were to believe the assertion that he was in Kitsap County jail at the time.

2 RP at 206-07.

The jury found Cranor guilty of burglary in the second degree, possession of stolen property in the first degree, and both counts of bail jumping.[4] Cranor appeals.

---

[4] After the jury verdict, Cranor filed a motion to arrest the judgment and be awarded a new trial under CrR 7.4 and 7.5. The filing was late and the trial court declined to consider the motion.

ANALYSIS

I.     PROSECUTORIAL MISCONDUCT

Cranor argues the State committed prosecutorial misconduct during closing argument. We disagree.

A.     Standard of Review

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Lindsay*, 180 Wn.2d 423, 440, 326 P.3d 125 (2014). We examine the prosecutor's conduct and whether prejudice resulted therefrom by considering the evidence presented, "'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

B.     Closing Argument

Cranor argues that the prosecutor's statement that there was "'[n]o evidence'" Cranor was in jail at the times he failed to appear in court was a flagrant and prejudicial misstatement of the evidence. Br. of Appellant at 18 (quoting 2 RP at 206). However, when read in context, the prosecutor's statements were more nuanced than Cranor contends. The prosecutor did not argue there was "[n]o evidence" generally; but instead, argued there was no evidence to support Cranor's affirmative defense that "uncontrollable circumstances" prevented him from appearing at court. 1 RP at 198; 2 RP 206.

Cranor contends that the prosecutor misstated the circumstantial evidence regarding him being in the Kitsap County jail.[5] However, when the prosecutor stated there was only "an assertion" that Cranor was actually in the Kitsap County jail, the statement was accurate because the only evidence was an assertion in the clerk's notes. 2 RP at 206. No documents of his actual imprisonment were submitted. The prosecutor argued that even if the statements in the clerk's notes were true, they did not support the affirmative defense to bail jumping. In so doing, the prosecutor was not attacking the accuracy of the statements in the clerk's notes but was arguing the weight the statements should be given and their applicability to the affirmative defense.

Cranor compares his case to cases, such as *State v. Miles*, 139 Wn. App. 879, 162 P.3d 1169 (2007), in which a prosecutor suggested there was other evidence the jury did not get to see. In *Miles*, the prosecutor cross-examined a witness about certain events but never offered evidence of the events. 139 Wn. App. at 885-86. In that case, we held that because the prosecutor used impeachment of a witness to submit information otherwise unsupported by extrinsic evidence, the prosecutor's conduct was improper. *Miles*, 139 Wn. App. at 886-87. The circumstance in *Miles* was quite different from the one before us now. Cranor does not point to an instance where the prosecutor suggested there was additional prejudicial evidence the jury did not know. Instead, Cranor argues the prosecutor misspoke when he said the evidence did not prove the affirmative defense to bail jumping. Additionally, the prejudicial fact that Cranor was incarcerated in Kitsap

---

[5] Cranor also states that the prosecutor went further and suggested Cranor was not incarcerated. First, Cranor provides no citation to support this assertion. Second, the prosecutor's statements do not appear to be about whether or not Cranor was in jail, but about whether or not the information proved his affirmative defense.

County was already in evidence, without defense objection. The additional cases Cranor cites on this point are also distinguishable. *See State v. Beard*, 74 Wn.2d 335, 444 P.2d 651 (1968); *State v. Babich*, 68 Wn. App. 438, 842 P.2d 1053 (1993); *State v. Ra*, 144 Wn. App. 688, 175 P.3d 609 (2008).

Cranor finally argues that the State's own evidence supported his affirmative defense to bail jumping. However, the elements of the affirmative defense are that Cranor must have been prevented from attending court by "uncontrollable circumstances," he must not have contributed to the circumstances, and he must have appeared as soon as the circumstances ceased. RCW 9A.76.170(2). This affirmative defense must be proven by a preponderance of the evidence. *See State v. O'Brien*, 164 Wn. App. 924, 931, 267 P.3d 422 (2011). The court instructed the jury with examples of "uncontrollable circumstances" including, "an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of man such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future." CP at 59. The State consistently put forth its theory that simply being in jail in another county did not constitute proof of uncontrollable circumstances. Because we have been provided no authority to the contrary, and for the reasons above, we conclude the prosecutor did not misstate the evidence; therefore, there was no prosecutorial misconduct.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Cranor argues he received ineffective assistance of counsel because his lawyer did not renew Cranor's severance motion and because his lawyer did not object to the prosecutor's statements about his bail jumping defense. We disagree.

A.      Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove ineffective assistance of counsel, an appellant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness and that (2) the deficient performance prejudiced him to the extent that there is a reasonable probability the deficient performance affected the outcome of the trial. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (applying the *Strickland v. Washington*, 466 U.S. 668, 668-700, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), test). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

Competency of counsel is determined on the entire record below. *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). An appellant faces a strong presumption that counsel's representation was effective. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

B.      Motion to Sever Charges

Cranor argues he received ineffective assistance of counsel because his lawyer did not renew Cranor's severance motion and therefore, waived the issue of severance on appeal. Additionally, Cranor contends a renewed severance motion would likely have been granted and counsel's performance likely prejudiced Cranor because the outcome of separate trials for the original charges and the bail jumping charges would have been different.

"Severance of charges is important when there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or to infer a general criminal disposition." *Sutherby*, 165 Wn.2d at 883. However, Washington law disfavors separate trials. *State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010). To determine whether to sever charges to avoid prejudice to a defendant, a court considers "'(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.'" *Sutherby*, 165 Wn.2d at 884-85 (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

Severance issues are properly made pretrial, or "may be made before or at the close of all the evidence if the interests of justice require." CrR 4.4(a)(1). A trial court "shall grant a severance of offenses," on application of the defendant, when "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). "If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion." CrR 4.4(a)(2).

In Washington, a bail jumping charge is sufficiently connected to the underlying charge if the two offenses relate in time and the bail jumping charge stems directly from the underlying charge. *State v. Bryant*, 89 Wn. App. 857, 866-67, 950 P.2d 1004 (1998). The trial court properly tries bail jumping and other charges together as a matter of law if these requirements are met and the defendant is not prejudiced. *Bryant*, 89 Wn. App. at 867.

Cranor contends that in light of the voir dire responses and the evidence presented during the State's case, the trial court would likely have granted a renewed motion to sever. We disagree. Because a defense attorney need not bring a futile motion, defense counsel's conduct was not deficient.[6] Based on the four part test of *Sutherby*, another motion to sever would have been futile. 165 Wn.2d at 884-85.

With regard to the factors considered by a trial court when deciding a motion sever, Cranor generally argues the bail jumping charges allowed the jury to infer a criminal disposition; however, Cranor does not provide specific arguments as to why the jury verdict would have been different on each count. He does not specify the prejudice. He makes general statements. The evidence does not support Cranor's position.

On the burglary charge, the State presented evidence that the Campbells saw Cranor on their personal beach. The Campbells testified that they watched Cranor move items from the part of their beach where the cabana was located to what turned out to be a boat. The Campbells inspected their cabana and found their grill cover was missing, and Scott found the cover where Cranor docked the boat, after following Cranor along the shoreline. The Campbells also observed other signs that someone had been inside their cabana.

To prove the possession of stolen property in the first degree charge, the State was required to prove that Cranor possessed stolen property that exceeded $5,000 in value. RCW 9A.56.150(1). The testimony of the Campbells and Walgren, as well as the insurance claim made by Walgren, that put the estimated value of the items in the boat at roughly $5,800, support this charge. And to prove the bail jumping charges, the State was required to prove Cranor was released by court

---

[6] Cranor also makes several other arguments about his counsel's deficient performance. However, we do not reach these arguments because of our holding.

14

order or on bail, with knowledge of the requirement to appear later, and failed to do so. RCW 9A.76.170(1). The State presented this evidence through court documents and testimony from the court clerk. Based on the evidence the State presented to support each charge, it is not clear that the result would have been different had the trial court severed the counts.

Second, Cranor argues the assertion of an affirmative defense to bail jumping likely bled over to the underlying charges. This claim is essentially the same argument as stated above. Cranor does not explain how joinder impacted clarity of the defense to each charge. Defense counsel advanced a theory of mistaken identity for the burglary and possession of stolen property charges. Counsel then asserted an affirmative defense to the bail jumping charges, arguing that Cranor in fact did miss the dates charged, but had a reason that was out of his control. These defenses are separate and distinct.

Third, Cranor argues the jury would not have been able to compartmentalize the evidence for each charge. However, the jury was instructed to consider each count separately. Additionally, as outline above, there is no indication that the jury empaneled was incapable of following jury instruction.

Fourth, and finally, Cranor argues that the evidence presented on the charges was not cross-admissible. While it is true that evidence of bail jumping was not admissible to prove the burglary and possession counts, evidence that Cranor was charged with an offense and released was admissible to prove bail jumping. *See* RCW 9A.76.170. Severance is not automatically required where evidence for one charge is not admissible for another. *State v. Bythrow*, 114 Wn.2d 713, 720, 790 P.2d 154 (1990). Additionally, Washington courts have already settled that a bail jumping charge is sufficiently connected to the underlying charge if the offenses relate in time and the bail jumping charge stems directly from the underlying charge. *Bryant*, 89 Wn. App. at 866-

67. The burden is on the defendant at trial to demonstrate the charges cannot be joined because of prejudice. *Bythrow*, 114 Wn.2d at 718.

The four factors do not indicate the trial court would have changed its ruling had Cranor's attorney renewed the motion to sever after evidence was presented. The parties questioned all of the potential jurors about bail jumping and there is nothing to suggest that the empaneled jury had strong feelings about the crime. The potential jurors who indicated the bail jumping charges would impact their decisionmaking on the other charges were dismissed either for cause or during peremptory challenges. The remaining jurors either did not respond to any of the questions regarding potential prejudice from bail jumping or they specifically indicated they could treat each charge separately. There is also no indication that events during voir dire of the second jury venire would have changed the trial court's ruling. We conclude defense counsel's performance was not deficient.

C.      Misstatement of the Evidence

Cranor also argues he received ineffective assistance of counsel because defense counsel failed to object to the prosecutor's misstatement of the evidence.[7] Cranor argues no conceivable trial tactic explains counsel's performance and furthermore, even if counsel wanted to avoid drawing attention to the statement, he could have moved for a mistrial. We conclude that because the prosecutor's statements were not improper, Cranor's defense attorney's failure to object was not deficient.

---

[7] The State asserts it is unclear whether or not defense counsel objected. From a review of the record, it is clear defense counsel objected to a separate statement.

16

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.